UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__3/28/2024___
```

| | |
|---|---|
| ALLEN JEFFREY SATZ,<br><br>                              Plaintiff,<br><br>              -against-<br><br>ORGANIZATION FOR THE RESOLUTION OF AGUNOT INC., AVRAHAM KAHAN, YISROEL ISAACS and RABBI DOVID BARTFELD,<br><br>                              Defendants. | 23-cv-36 (MKV)<br><br><u>OPINION & ORDER</u><br><u>GRANTING</u><br><u>MOTION TO DISMISS</u> |

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Allen Jeffrey Satz, proceeding *pro se*, asserts claims for defamation and other torts against Defendant Organization for the Resolution of Agunot Inc. ("ORA") for allegedly accusing Plaintiff of domestic abuse and instigating a campaign of public harassment against him [ECF No. 13 ("the Complaint" or "Cmpl.") ¶¶ 7, 16]. As the Complaint makes clear, Plaintiff and "Mrs. Satz [are] divorced under" secular law, but Plaintiff has not consented to a divorce under Jewish law, which is known as a "Get" and typically requires the husband's consent. Cmpl. ¶¶ 19, 22; *see id.* ¶¶ 39, 46, 47. ORA describes itself as an organization that "advocate[s] for the timely and unconditional issuance of a Get" [ECF No. 15 ("Def. Mem.") at 5]. ORA posted on its website a graphic bearing Plaintiff's picture, labeling him a "**GET-REFUSER**," and asserting that "**GET-REFUSAL IS DOMESTIC ABUSE**" [ECF No. 13 at 16]. *See* Cmpl. ¶¶ 7, 12; Def. Mem. at 9. ORA also posted a copy of a "Psak Din," a ruling by a rabbinical court, which states that Plaintiff's "recalcitran[ce]" justifies doing "anything that is not a criminal offense . . . to cause him to comply" with rabbinical court proceedings [ECF No. 13 at 13].

ORA moves to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure [ECF No. 14]. That motion is GRANTED for the reasons set forth below.

## I.   <u>BACKGROUND</u>

### A.  Facts[1]

In the Complaint, Plaintiff alleges that ORA posted on its website the "flyer" below, bearing his picture "along with a description that [G]et refusal is domestic abuse."  Cmpl. ¶ 12.



---

[1] The facts are taken from Plaintiff's operative pleading [ECF No. 13 ("the Complaint" or "Cmpl.")] and, for purposes of this motion, are accepted as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The "complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  Thus, the Court considers the allegedly defamatory "flyer," Cmpl. ¶ 12, and "Psak Din (Arbitration Ruling)" that ORA posted on its website, both of which Plaintiff attached to the Complaint as Exhibit A [ECF No. 13 at 12–17].  Defendant includes a clearer, copy of the flyer in its opening brief [ECF No. 15 ("Def. Mem.") at 9].

[ECF No. 15 at 9; *see* ECF No. 13 at 16].[2]  Plaintiff alleges that the flyer is defamatory because it falsely accuses him of domestic abuse.  Cmpl. ¶¶ 16, 20.  He further alleges that the flyer falsely "accuses [him] of refusing to give a get for over four years."  Cmpl. ¶ 21.  According to Plaintiff, "Mrs. Satz refused the Get for almost two years so she could use the children as leverage for monetary gain" in their secular divorce.  Cmpl. ¶ 21.  Plaintiff also alleges that "ORA claims that Mrs. Satz is unable to get remarried without the Get" but she "is divorced under [the laws of] the State of New Jersey" and "is free to marry anyone she likes."  Cmpl. ¶ 22.

Plaintiff also complains about ORA's use of his picture.  He alleges that the picture of him ORA posted "on [its] web site was from a Zoom Court hearing and was taken and used without authorization."  Cmpl. ¶ 28.  He further alleges that ORA "has illegally used my image to foster donations from donors claiming they are needed for another chained woman."  Cmpl. ¶ 29.

Plaintiff alleges that ORA also "published . . . a PDF document signed by three 'rabbis.'"  Cmpl. ¶¶ 7, 8; *see* Cmpl. ¶ 23.  That document, which is attached to the Complaint, is titled:

Psak Din (Arbitration Ruling)
IN THE MATTER OF:
Get (Jewish Divorce)
Between:
Mr. Ari (All[e]n) Satz
V.
Mrs. Chavi (Ava) Satz

[ECF No. 13 at 12–15 ("Psak Din")].  Plaintiff alleges that the "ruling was provided to ORA by the individuals who signed said document; namely, Rabbi Avraham Kahan, Yisroel Isaacs and Rabbi Dovid Bartfeld."  Cmpl. ¶ 7.  Plaintiff further alleges that the Psak Din contains a number of "lies" about him and "requests" that people engage in "a campaign of public humiliation" and "harassment" against him.  Cmpl. ¶¶ 7, 9, 23.

---

[2] The image in this opinion is copied from Defendant's opening brief.  It appears to be identical to the image attached to Plaintiff's pleading, except that the image in the Complaint is black and white and appears less sharp.

Specifically, Plaintiff alleges the Psak Din falsely states that Mrs. Satz had been "chained to the marriage for four and [a] half years at the time of the ruling." Cmpl. ¶ 23; *see also* Psak Din [ECF No. 13 at 13] ("she is Agunah for close to four and a half years"). According to Plaintiff, that statement falsely implies that he had been refusing to give her a Get for "six months that [they] lived together and six months before she even filed for divorce." Cmpl. ¶ 23. The statement "is also a lie," Plaintiff alleges, "because Mrs. Satz refused the Get for almost two years." Cmpl. ¶ 23; *see also* Cmpl. ¶ 21.

Next, Plaintiff alleges the Psak Din falsely "states that Mrs. Satz has summoned me before numerous Beis Din's [sic] over the course of four years and I have refused to appear." Cmpl. ¶ 23; *see also* Psak Din at 13 ("over the course of those years she summoned him to arbitration [Din] before numerous Rabbinical Courts [Batei Din] and he has been . . . refusing to appear") (brackets in original). Plaintiff alleges that he "was summoned only twice by a single Beis Din and replied both times that [he] would be willing to go to Beis Din." Cmpl. ¶ 23. He adds that he "responded properly to each summons." Cmpl. ¶ 23.

The Psak Din rules that Plaintiff has been "recalcitrant" to the rabbinical court proceedings and "is obligated to divorce his wife" in accordance with Jewish law. Psak Din ¶¶ 1, 3. As Plaintiff alleges in the Complaint, the ruling states that "anything that is not a criminal offense . . . may be done in order to cause him to comply . . . ." Psak Din ¶ 2; *see* Cmpl. ¶¶ 7, 8. The ruling further states that "it is proper to publicize that in [the rabbis'] opinion," people should "distance and separate from" Plaintiff. Psak Din ¶ 5; *see* Cmpl. ¶ 24. And, the ruling further states, if he remains recalcitrant, "it is proper to demonstrate against him, and against those who support him, and to further publicize his/their scandalous behavior." Psak Din ¶ 6; *see* Cmpl. ¶ 9.

Finally, Plaintiff attacks the authenticity of the Psak Din.  He alleges: "The signature of 'Yisroel Isaacs' is completely different from the November 2021 ruling as compared to the July 2022 ruling.  He has refused to have the signature authenticated.  The signatures on the July 2022 ruling and February 2023 ruling are an identical match.  This shows they were not signed by three judges, but rather printed from a computer."  Cmpl. ¶¶ 31–32.  The only ruling that is attached to the Complaint, the Psak Din discussed above, is dated July 6, 2022.  *See* Psak Din at 15.

### B.  Procedural History

Plaintiff is proceeding *pro se*.  He initiated this case by filing a complaint, which he has amended twice [ECF Nos. 1, 9, 13].  In the original complaint, Plaintiff named ORA as the only defendant [ECF No. 1].  The Court issued an Order of Service in which it warned Plaintiff that failure timely to serve the defendant could result in dismissal "under Rules 4 and 41 of the Federal Rules of Civil Procedure" [ECF No. 3].  The Clerk's Office also mailed Plaintiff an "Information Package," which explains that he "will have to serve each defendant" [ECF No. 5 at 2].  Plaintiff filed proof of service on ORA, and ORA appeared [ECF Nos. 6, 7].

Thereafter, ORA filed a pre-motion letter requesting leave to file a motion to dismiss the original complaint [ECF No. 8].  In response, Plaintiff filed a first amended complaint, which named "Avraham Kahan, Yisroel Isaacs and Rabbi Dovid Bartfeld" as additional defendants (collectively, the "Individual Defendants"), along with ORA [ECF No. 9].  Plaintiff did file proof of service on the Individual Defendants.

The Court issued an Order granting ORA leave to file a motion to dismiss and *sua sponte* granting Plaintiff leave to file a second amended complaint, before ORA filed a motion to dismiss, to cure deficiencies identified in ORA's pre-motion letter [ECF No. 10].  In that Order, the Court warned: "This will be Plaintiff's last opportunity to amend in response to arguments raised in the

pre-motion letter" [ECF No. 10].  In a later Order granting Plaintiff an extension of time, the Court again warned that it would be Plaintiff's last opportunity to cure defects identified in the pre-motion letter [ECF No. 12].

Plaintiff thereafter filed his operative pleading [ECF No. 13], a second amended complaint, which the Court refers to simply as the "Complaint."  The Complaint asserts claims against ORA and the Individual Defendants; however, the Individual Defendants have never been served and have never appeared.

The Complaint purports to assert six causes of action under New York law:[3] (1) defamation, Cmpl. ¶¶ 13–26; (2) "unauthorized use of photo," Cmpl. ¶¶ 27–29; (3) "use of a forged document," Cmpl. ¶¶ 30–32; (4) false light, Cmpl. ¶¶ 33–34; (5) intentional infliction of emotional distress, Cmpl. ¶¶ 35–42; and (6) civil conspiracy, Cmpl. ¶¶ 43–48.

ORA filed a motion to dismiss [ECF No. 15 ("Def. Mem.")].  ORA argues that the allegedly defamatory statements are substantially true or statements of opinion and that Plaintiff fails to state any other claim.  Plaintiff filed a brief in opposition to the motion to dismiss and attached numerous exhibits [ECF No. 17 ("Opp.")].  He then filed a letter reiterating and expanding on his allegations in the Complaint about the signatures on the Psak Din [ECF No. 19].  ORA filed a reply brief in further support of its motion [ECF No. 18].

---

[3] Where, as here, a plaintiff invokes the Court's diversity jurisdiction to assert tort claims, the Court determines what state's substantive law to apply by looking to the choice of law principles of the forum state, which, here, is New York.  *See Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 175 (2d Cir. 2000) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  The Court need not conduct a full choice of law analysis, however, because the parties appear to agree that New York law governs Plaintiff's claims.  *See Celle*, 209 F.3d at 175 (the parties were "deemed to have consented to" the application of New York defamation law, even though the plaintiff was domiciled in New Jersey); Cmpl. ¶¶ 15 (alleging the elements of defamation "under New York law"), 16 (citing the Appellate Division), 34 (asserting that the false light claim is "identical" to the defamation claim, which the Complaint earlier stated is governed by New York law), 37 (alleging intentional infliction of emotional distress "[i]n New York" and "[u]nder New York law"), 53 (invoking New York law); Def. Mem. at 7, 12–14, 17–18, 19.

Thereafter, the Court issued an Order directing Plaintiff to "serve the individual defendants and file proof of such service on the docket," or "the Court [would] dismiss the claims against the individual defendants" [ECF No. 20].  In response, Plaintiff filed a letter stating, in pertinent part: "I am hereby dismissing the charges against Yisroel Isaacs, Rabbi David Barfield, and Rabbi Avraham Kahan.  I would only like to pursue charges against The Organization for the Resolution of Agunot, Inc. (ORA)" [ECF No. 21].  As such, the Court directed the Clerk of Court to terminate the case as to the Individual Defendants [ECF No. 22].

## II.   <u>LEGAL STANDARD</u>

To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The allegations must raise "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  The Court must "accept all factual allegations as true and draw all reasonable inferences in plaintiff's favor."  *Ofori-Tenkorang v. Am. Int'l Grp., Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).  However, the Court need not accept conclusory assertions.  *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).

On a motion to dismiss, "the complaint is deemed to include any written instrument attached to it" or "incorporated in it by reference."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).  The Court may also consider a document if "the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint."  *Id.* (quoting *Int'l Audiotext*, 62 F.3d at 72).  Even at the pleading stage, the Court is not required to accept the truth of assertions in a pleading that are "contradicted by more specific allegations or documentary evidence."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

The Court must "liberally construe pleadings and briefs submitted by *pro se* litigants." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017).  A district court is not, however, tasked with "scouring obscure bodies of law in order to come up with novel claims on behalf of *pro se* litigants." *Id.* at 158.  Even a *pro se* complaint must give the defendant "fair notice of [the] claim and the grounds upon which it rests." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008); *see also Twombly*, 550 U.S. at 545.

### III. <u>ANALYSIS</u>

#### A. **Plaintiff Fails To State a Claim for Defamation.**

Plaintiff alleges that ORA defamed him by posting on its website the flyer and Psak Din described above.  The Court concludes as a matter of law, however, that, in context, the statement that Get-refusal is domestic abuse is not a provably false statement of fact.  Moreover, Plaintiff fails to plausibly allege that many of ORA's statements are not substantially true.  Finally, ORA was not negligent in posting either the flyer, or the Psak Din.

Defamation is "injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." *Center for Med. Progress v. Planned Parenthood Federation of America*, 551 F. Supp. 3d 320, 325 (S.D.N.Y. 2021) (citing *Morrison v. Nat'l Broad. Co.*, 19 N.Y.2d 453, 280 N.Y.S.2d 641, 227 N.E.2d 572, 574 (1967)), *aff'd sub nom.*, *Daleiden v. Planned Parenthood Fed'n of America*, 2022 WL 1013982 (2d Cir. Apr. 5, 2022).  Plaintiff alleges that he was defamed by written statements, and, as such, he asserts a claim for libel.

As noted above, the parties agree that New York law governs. *See supra* n.3; Cmpl. ¶¶ 15, 16; Def. Mem. at 12–16.  To state a claim for libel under New York law, a plaintiff must allege: (1) a written defamatory factual statement concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability.

*Palin v. New York Times*, 940 F.3d 804, 809 (2d Cir. 2019); *see Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 34, 987 N.Y.S.2d 37, 41 (1st Dep't 2014). "Though a state-based cause-of-action, the elements of a libel action are heavily influenced by the minimum standards required by the First Amendment." *Celle*, 209 F.3d at 176. The First Amendment protects Americans' rights to express opinions and make statements they reasonably believe to be true, even though it "may significantly harm a plaintiff's reputation." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 468 (S.D.N.Y. 2012); *see Tannerite Sports, LLC v. NBCUniversal News Grp*, 864 F.3d 236, 244 n.6 (2d Cir. 2017); *Adelson v. Harris*, 973 F. Supp. 2d 467, 487 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017).

### 1. The Accusation of Domestic Abuse

The key allegedly defamatory statement in this case is "**GET-REFUSAL IS DOMESTIC ABUSE**," which appears at the bottom of the "flyer" that ORA posted on its website [ECF No. 13 at 16]. *Supra* at 2; Cmpl. ¶ 12. The flyer labels Plaintiff a "**GET-REFUSER**" [ECF No. 13 at 16]. *Supra* at 2. Plaintiff argues that ORA is liable for defamation per se because it falsely accused him of a crime. *See* Cmpl. ¶¶ 16, 20; Opp. at 11–15. ORA argues: the assertion that "get-refusal is domestic abuse" is not a statement of fact; "there is no crime of domestic abuse under New York State law"; and it is substantially true that Get-refusal is a form of domestic abuse because Jewish law recognizes Get-refusal as a form of "coercive control" and many jurisdictions recognize coercive control as a form of domestic abuse. Def. Mem. at 13–14, 16–17.

A plaintiff may allege "defamation per se," and, therefore, is not required to plead special damages, "for statements that charge [the plaintiff] with committing a serious crime." *Geraci v. Probst*, 15 N.Y.3d 336, 344 938 N.E.2d 917, 922 (2010). ORA stresses that "domestic abuse" is not defined "in the New York Penal Law." Def. Mem. at 16. However, the Court assumes for

purposes of this motion that an accusation of domestic abuse "would be commonly understood" as an accusation of serious criminal conduct. *Levin v. McPhee*, 119 F.3d 189, 195 (2d Cir. 1997). Thus, the Court assumes that Plaintiff adequately alleges per se actionability.

However, simply invoking a criminal act or accusing a person of a crime does not transform an otherwise nonfactual assertion into a statement of fact. *See Greenbelt Coop. Pub. Ass'n v. Bressler*, 398 U.S. 6, 14 (1970). Whether an allegedly defamatory statement is a statement of fact is a legal question, informed by the context of the statement in question. *Mr. Chow of N.Y. v. Ste. Jour Azur S.A.*, 759 F.2d 219, 224 (2d Cir. 1985); *see Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235, 244-45, 567 N.E.2d 1270, 1274-75 (N.Y. 1991) (a court considering a defamation claim must review the context of the whole publication). Expressions of opinion are not actionable. *See Levin*, 119 F.3d at 196; *Biro*, 883 F. Supp. 2d at 459; *Gross v. New York Times Co.*, 82 N.Y.2d 146, 603 N.Y.S.2d 813, 623 N.E.2d 1163, 1166 (1993). Moreover, whether a statement is *presented* as fact or opinion, it cannot be defamatory unless it states or implies a provably false statement of fact. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19–21 (1990).

Taken in context, ORA's statement on the flyer posted on its website that "**GET-REFUSAL IS DOMESTIC ABUSE**" is not a statement of fact. As an initial matter, the flyer contains a whole list of statements purporting to be facts that appear under the heading "**FACTS:**," and the statement that Get-refusal is domestic abuse is segregated from this list. It appears in a different section of the flyer, in a different color, and in a different typeface. The statement that Get-refusal is domestic abuse is also positioned near what appears to be the ORA logo, which features English and Hebrew letters and says, "FREEING AGUNOT. PREVENTING ABUSE." In this context, the statement that Get-refusal is domestic abuse clearly is an expression of opinion by an advocacy organization. *See Brian v. Richardson*, 87 N.Y.2d 46, 53, 660 N.E.2d 1126, 1131 (1995) (an article that allegedly

"falsely accused [plaintiff] of participating in an illegal conspiracy" was not actionable in part because the "purpose of defendant's article was to advocate" for an investigation); *600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 145, 603 N.E.2d 930, 938 (1992) (holding that a "statement of opinion and advocacy" was not actionable); Moreover, whether or not ORA presented this statement as a statement of fact, the notion that Get-refusal is abusive is not a provably false statement of fact. *See Milkovich*, 497 U.S. at 19–21. ORA has a First Amendment right to express its opinion that it is abuse for a spouse to withhold the "the timely and unconditional issuance of a Get." Def. Mem. at 5; *see Biro*, 883 F. Supp. 2d at 468.

In arguing that he has been falsely accused, Plaintiff argues that "not giving the 'get' when a woman violates all Jewish law in the divorce is allowed." Opp. at 14. This argument simply underscores that ORA's statement is not actionable. Plaintiff believes he is justified in refusing to give his wife a Get, and ORA disagrees. With its list of "**FACTS**" preceding the statement "**GET-REFUSAL IS DOMESTIC ABUSE**," the flyer is an expression of ORA's opinion based on the facts as it understands them. An "expression of opinion based on disclosed . . . nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is." *Adelson*, 973 F. Supp. 2d at 490 (quoting Restatement (Second) of Torts § 566, cmt. c.). The Second Circuit has explained that, given the importance of First Amendment protections, "a court should err on the side of non-actionability" when there is a close question whether the allegedly defamatory statement is a provably false factual statement. *Adelson*, 973 F. Supp. 2d at 487 (quoting *Celle*, 209 F.3d at 188).

Accordingly, the Court concludes that Plaintiff fails to state a claim for libel with respect to the accusation that Get-refusal is domestic abuse.

### 2. The Other Statements on the Flyer

As noted above, falsity is an element of libel under New York law. *Tannerite Sports*, 864 F.3d at 247. Thus, to survive a motion to dismiss, a plaintiff "must plead facts that, if proven, would establish that the defendant's statements were not substantially true." *Id.* Furthermore, "[m]inor inaccuracies do not amount to falsity so long as the substance" or "gist" of the statement is "justified." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) (internal quotation marks and citation omitted); *see Tannerite Sports*, 864 F.3d at 242–43 ("New York law recognizes that an alleged libel is not actionable if the published statement could have produced no worse an effect on the mind of a reader than the truth pertinent to the allegation.").

The flyer asserts, under the heading "**FACTS**," that: Plaintiff and his wife married in 2006 and separated in 2018; "Ari has been refusing to give Chavi a *get*, a Jewish divorce"; "Without a *get*, Chavi is unable to remarry and is left an *agunah*, chained to a dead marriage"; a rabbinical court "issued a *psak* against Ari**,** stating that he is . . . recalcitrant to submit to" the rabbinical court proceedings "and that he is obligated to give Chavi a *get*"; "Jewish law forbids" various forms of association with Plaintiff; and he lives in a certain area of New Jersey. *Supra* at 2 (emphasis omitted). In a separate section, the flyer also states: "Chavi has been chained to a dead marriage for over four years!" *Supra* at 2.

Plaintiff does not contest the truth of many of these statements. He confirms that he and his wife separated in 2018. *See* Opp. at 3. He does not challenge the statement about where he lives. Plaintiff also cannot and does not contest the statement that a rabbinical court "issued a *psak*," ruling that Plaintiff is "recalcitrant" and "obligated" to consent to a Get, since he attaches the Psak Din to the Complaint, and it does, in fact, contain those rulings. Psak Din ¶¶ 1, 3.

Plaintiff also does not specifically contest the truth of the statement, "Ari has been refusing to give Chavi a *get*, a Jewish divorce." Indeed, he indirectly confirms that, for at least some period of time, Plaintiff has refused to consent to a Get. In the Complaint, Plaintiff accuses Defendants of committing torts "for the purpose of extracting a Get from [him]." Cmpl. ¶ 46; *see* Cmpl. ¶ 39 (alleging that Defendants seek to make him "succumb . . . and relinquish [his] GET property right"). In his brief, Plaintiff asserts that he had agreed to "give her the 'get'" on the condition that she agree to a certain custody arrangement. Opp. at 3. Plaintiff contends that his wife is to blame for not accepting the Get when he offered it, on the terms he offered it, but he confirms that he has since withheld his consent. *See* Opp. at 5 (he warned "the Beis Din of America . . . that if they don't stop Mrs. Satz from continuing to harm me and my children, the 'get' will be given at my discretion"); *id.* (there was a "recommendation" for "50/50 custody and Mrs. Satz gets her 'get,'" and Plaintiff agreed, but she refused, so, ultimately, Plaintiff "signed [the] custody Mrs. Satz wanted" but "she did not get her 'get'"); *see also id.* at 17 ("A man has to give a woman a 'get' with his free will. If he is dragged through court, sees his kids suffer, has his time with his kids reduced because his wife had more money than he did, and then be expected to give a 'get' with his free will – it will never happen!").

Plaintiff does specifically allege that the flyer falsely "accuses [him] of refusing to give a get *for over four years*." Cmpl. ¶ 21 (emphasis added). But that is not what the flyer says. *See L-7 Designs, Inc.*, 647 F.3d at 422. Plaintiff complains that "Mrs. Satz refused the Get for almost two years" to "use the children as leverage for monetary gain" in their secular divorce. Cmpl. ¶ 21. The challenged statement on the flyer is: "Chavi has been chained to a dead marriage for over four years!" *Supra* at 2. It does not specifically accuse Plaintiff of unequivocally refusing to give his wife a Get under any set of conditions for the entire, more-than-four-year, period. It would not

produce a substantially different and better effect on the mind of the reader if the challenged statement were rewritten to say: Chavi has been chained to a dead marriage because Plaintiff has refused to give his wife a Get on terms she considered acceptable for over four years! *See Tannerite Sports*, 864 F.3d at 242–43. As such, Plaintiff has not adequately alleged falsity, and the "alleged libel is not actionable." *Id*.

Plaintiff also contests the truth of the statement that "[w]ithout a *get*, Chavi is unable to remarry . . . ." *Supra* at 2; *see* Cmpl. ¶ 22. Plaintiff alleges the statement is false because "Mrs. Satz is divorced under the State of New Jersey" and, therefore, "is free to marry anyone she likes." Cmpl. ¶ 22. It is clear in context that the flyer means Plaintiff's wife is unable to remarry under Jewish law without a Get, which is substantially true.

Finally, Plaintiff takes issue with the flyer's statement that "Jewish law forbids" various forms of association with Plaintiff. *Supra* at 2; *see* Cmpl. ¶ 24. According to Plaintiff, that statement reflects the "opinion" of the rabbinical court, but "Ora writes it on their website as a fact." Cmpl. ¶ 24; *see* Psak Din ¶ 5. Again, the Court doubts that, in the context of the whole flyer, rewriting the challenged statement (to say, *e.g.*, a rabbinical court has ruled that Jewish law forbids various forms of association with Plaintiff) would produce a substantially better impression on the ordinary reader. *See Tannerite Sports*, 864 F.3d at 242–43. More importantly, as discussed below, adjudicating the truth or falsity of ORA's statement about what "Jewish law forbids," *supra* at 2, would impermissibly entangle the Court in an "inquiry . . . into religious law," *Serbian E. Orthodox Diocese for U. S. of Am. & Canada v. Milivojevich*, 426 U.S. 696, 709 (1976).

### 3. Posting the Psak Din

Plaintiff contends that ORA defamed him by posting the Psak Din, which Plaintiff alleges contains "lies" about him. Cmpl. ¶ 23. Plaintiff takes issue with the statements in the Psak Din

that: his wife had been "chained to the marriage for four and [a] half years at the time of the ruling," Cmpl. ¶ 23; *see* Psak Din at 13 ("she is Agunah for close to four and a half years"); and his wife "summoned" him to "Beis Din's [sic]" but he "refused to appear," Cmpl. ¶ 23; *see* Psak Din at 13. The challenged statements in the Psak Din were made by the Individual Defendants, rather than ORA.  However, it is well established that a defendant who republishes defamatory statements, "unless protected by a privilege, is as liable as if he had made the statements himself." *Cianci v. New Times Pub. Co.*, 639 F.2d 54, 60 (2d Cir. 1980).

ORA argues that it cannot be held liable because the statements in the Psak Din are entitled to either absolute or qualified privilege.  Def. Mem. at 14–15.  In particular, "it is well settled in New York that statements made in quasi-judicial proceedings, . . . are protected by an absolute privilege" from defamation claims. *Kamdem-Ouaffo v. Balchem Corp.*, 2018 WL 4386092, at *19 (S.D.N.Y. Sept. 14, 2018) (brackets omitted) (quoting *Farzan v. Wells Fargo Bank*, No. 12–cv–1217 (JLC), 2013 WL 474346, at *4 (S.D.N.Y. Jan. 25, 2013), *report and recommendation adopted*, 12–cv-1217 (RJS), 2013 WL 2641643 (S.D.N.Y. June 11, 2013)).  While there might be a colorable argument that a Beis Din is a quasi-judicial proceeding, the "absolute privilege" cases ORA cites involve proceedings before government agencies. *Kamdem-Ouaffo*, 2018 WL 4386092, at *19.  New York courts also apply a qualified privilege to statements "fairly made by a person in the discharge of some public or private duty, legal or moral." *Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333, 344 (S.D.N.Y. 2000) (quoting *Toker v. Pollak*, 44 N.Y.2d 211, 219, 376 N.E.2d 163, 166 (1978)).  While the classic example in these cases is reporting a crime to a police officer, there is a colorable argument that rabbis presiding over Get proceedings are engaged in the discharge of a moral duty and, therefore, the statements in the Psak Din, which ORA republished, are privileged. *See Toker*, 44 N.Y.2d at 219.

Moreover, as the Court alluded to above, there is a long line of Supreme Court precedents holding that the Establishment Clause of the First Amendment precludes judicial review of a claim that requires extensive inquiry into religious disputes. *See Milivojevich*, 426 U.S. at 709; *Jones v. Wolf*, 443 U.S. 595, 603 (1979); *Gonzalez v. Roman Catholic Archbishop of Manila*, 280 U.S. 1, 16–17 (1929); *see also Kavanagh v. Zwilling*, 997 F. Supp. 2d 241, 249 (S.D.N.Y.), *aff'd*, 578 F. App'x 24 (2d Cir. 2014); *Ram v. Lal*, 906 F.Supp.2d 59, 69–70 (E.D.N.Y. 2012); *Klagsbrun v. Va'ad Harabonim of Greater Monsey*, 53 F. Supp. 2d 732, 739 (D.N.J. 1999), *aff'd sub nom.*, *Klagsbrun v. Vaad Harabonm of Greater Monsey*, 263 F.3d 158 (3d Cir. 2001); *Hartwig v. Albertus Magnus Coll.*, 93 F. Supp. 2d 200, 219 (D. Conn. 2000). New York courts likewise refrain from the "adjudication of [defamation claims that] would impermissibly involve the court in matters left by constitutional design for ecclesiastic resolution." *Jackson v. Presbytery of Susquehanna Valley*, 265 A.D.2d 253, 253, 697 N.Y.S.2d 26, 27 (1999).

For this Court to adjudicate whether ORA defamed Plaintiff by republishing the Psak Din, the Court would have to determine the truth of the challenged statements in the Psak Din, which would impermissibly entangle the Court in questions of Jewish law. *See Milivojevich*, 426 U.S. at 709. For example, Plaintiff challenges the statement in the Psak Din that he "refused to appear" at Get proceedings. Cmpl. ¶ 23. Plaintiff alleges that he "responded properly" to the summonses of the Beis Din. Cmpl. ¶ 23. This Court cannot, consistent with the First Amendment, evaluate what constitutes a proper response to a summons under Jewish law. *See Kavanagh*, 997 F. Supp. 2d at 249; *Klagsbrun*, 53 F. Supp. 2d at 739. Similarly, this Court cannot evaluate at precisely what point in the deterioration of their marriage, if ever, Plaintiff's wife became an "Agunah," "chained to the marriage," within the meaning of Jewish law. Psak Din at 13. With respect to each challenged statement, "the central question for purposes of Plaintiff's libel" claim based on the

posting of the Psak Din "would result in the Court entangling itself in a matter of ecclesiastical concern, thereby violating the Establishment Clause." *Kavanagh*, 997 F. Supp. 2d at 254 (internal quotation marks and citation omitted).  As such, the Court must dismiss the claim.[4]

### B. Plaintiff Fails To State a Claim Based on the Use of his Picture.

Under the heading "**SECOND CAUSE OF ACTION -- UNAUTHORIZED USE OF PHOTO**," Plaintiff alleges: "The picture used by Ora of me on their web site was from a Zoom Court hearing and was taken and used without authorization."  Cmpl. ¶ 28.  In the next paragraph, he alleges: "Under the Right to Publicity Law, Ora has illegally used my image to foster donations from donors claiming they are needed for another chained woman."  Cmpl. ¶ 29.  These allegations are insufficient to state any claim upon which relief may be granted.

As an initial matter, even a *pro se* complaint must give the defendant "fair notice of [the] claim and the grounds upon which it rests.  *See Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008); *see also Twombly*, 550 U.S. at 545.  Here, neither the claim, nor the ground upon which it rests is clear.

The Court is not aware of a New York tort known as "unauthorized use of photo," nor a "Right to Publicity Law."  It is well established that "New York does not recognize a common-law right of privacy."  *Messenger ex rel. Messenger v. Gruner + Jahr Printing & Pub.*, 94 N.Y.2d 436,

---

[4] The Court also observes that Plaintiff might not adequately allege fault by ORA.  Since Plaintiff is not a public figure, the parties agree that the appropriate level of fault is merely negligence.  *See* Def. Mem. at 15; Opp. at 14; *Lawlor v. Gallagher Presidents' Report, Inc.*, 394 F. Supp. 721, 732 n.19 (S.D.N.Y.1975) (collecting New York cases).  Plaintiff asserts in his brief, but does not allege in the Complaint, that he "informed" ORA that the Psak Din "was full of lies."  Opp. at 3.  The ordinary rule is that "a complaint cannot be amended by the briefs in opposition to a motion to dismiss."  *Clean Coal Techs., Inc. v. Leidos, Inc.*, 377 F. Supp. 3d 303, 321 (S.D.N.Y. 2019) (quoting *LLM Bar Exam, LLC v. Barbri, Inc.*, 271 F. Supp. 3d 547, 580 (S.D.N.Y. 2017)).  However, "the mandate to liberally construe *pro se* pleadings" sometimes "makes it appropriate to consider the facts set forth in plaintiff's opposition papers."  *Acheampong v. United States*, 2000 WL 1262908 at *4 (S.D.N.Y. 2000) (quoting *Samuels v. Stone*, 1999 WL 624549, at *5 n.1 (S.D.N.Y. Aug. 17, 1999)).  As such, the Court accepts as true that Plaintiff "informed" ORA that the Psak Din "was full of lies."  Opp. at 3.  Yet, according Plaintiff, ORA represented that it "investigate[d] the issue" and concluded the ruling was "valid."  Opp. at 13.

441, 706 N.Y.S.2d 52, 727 N.E.2d 549 (2000).  Indeed, the Court is not aware of any common law or statutory claim for which it is sufficient to allege *only* that a person's picture was taken and used without permission.

However, Section 50 of the New York Civil Rights Law makes it a "misdemeanor" to "use[] for advertising purposes, or for the purposes of trade, the . . . picture of any living person without having first obtained the written consent of such person . . . ." N.Y. Civ. Rights Law § 50 (McKinney 2012).  And Section 51 authorizes a civil action.  *See* N.Y. Civ. Rights Law § 51.  The New York Court of Appeals has instructed that these provisions must be "strictly limited to nonconsensual commercial appropriations" and "prohibit the use of pictures . . . 'for advertising purposes or for the purposes of trade' only, and nothing more." *Finger v. Omni Publ'ns Int'l, Ltd.*, 77 N.Y.2d 138, 141, 564 N.Y.S.2d 1014, 566 N.E.2d 141 (1990) (quoting *Arrington v. New York Times Co.*, 55 N.Y.2d 433, 439, 449 N.Y.S.2d 941, 434 N.E.2d 1319 (1982)).  *See also Hoepker v. Kruger*, 200 F. Supp. 2d 340, 348 (S.D.N.Y. 2002) (quoting *Titan Sports, Inc. v. Comics World Corp.*, 870 F.2d 85, 87 (2d Cir. 1989)).

The flyer Plaintiff attached to his Complaint obviously has nothing to do with advertising or commercial trade.  In his opposition brief, Plaintiff asserts that his "unauthorized use of photo" claim is not based on the flyer ORA posted on its website and Plaintiff attached to the Complaint. Opp. at 15.  Instead, he asserts in his brief, this claim relates to a picture of Plaintiff that ORA posted on Facebook and used to solicit donations.  Opp. at 15.

The Complaint unmistakably alleges a claim based on the use of a picture on ORA's "web site." Cmpl. ¶ 28.  And there is nothing in the Complaint to suggest that Plaintiff is referring to a different picture, posed on Facebook, where Plaintiff alleges that ORA used his "image to foster donations from donors." Cmpl. ¶ 29.  But, even crediting the new assertion in Plaintiff's brief that

ORA posted his picture on Facebook for the purpose of soliciting donations, Plaintiff still fails to allege a "commercial appropriation[]" used for advertising or commercial trade. *Finger*, 77 N.Y.2d at 141; *see Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 140, 480 N.E.2d 349 (1985) (newspaper articles about divorce proceedings was not "commercial exploitation" for purposes of the statutes). As such, Plaintiffs fails to state a claim based on the use of his picture.

### C. Plaintiff Fails To State a Claim for Use of a Forged Document.

Plaintiff posits that the signatures on the Psak Din he attached to the Complaint are forged and the document is inauthentic. In the Complaint, Plaintiff alleges that "[t]he signature of 'Yisroel Isaacs'" on the Psak Din he attached to the Complaint, dated July 6, 2022, "is completely different from" the signature on a November 2021 ruling, and Isaacs "has refused to have the signature authenticated." Cmpl. ¶ 31. Plaintiff further alleges that "[t]he signatures on the July 2022 ruling and February 2023 ruling are an identical match. This shows they were not signed by three judges, but rather printed from a computer." Cmpl. ¶ 32.

The only ruling attached to the Complaint is the July 2022 ruling. However, Plaintiff filed numerous exhibits with his opposition to the motion to dismiss, including one document that appears to be a rabbinical ruling signed by Yisroel Isaacs that is not dated [ECF No. 17-3 at 16], a document that appears be a rabbinical ruling signed by Yisroel Isaacs dated February 23, 2023 [ECF No. 17-4 at 7], and what appears to be an email from Yisroel Isaacs, dated March 10, 2023, stating: "The signature on the psak is mine. There isn't any need for proof that it is my signature" [ECF No. 17-4 at 11]. Plaintiff also filed a letter reiterating that the Psak Din "might be a forgery" based on the appearance of the signatures, and arguing that the rabbis are guilty of forgery under "New York Penal Law 170" [ECF No. 19].

This is a civil case, and the Court is not aware of a civil cause of action for forgery. *See Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002) (affirming dismissal of "claims of sabotage, forgery, and perjury, which are crimes and therefore do not give rise to civil causes of action"). In any event, Plaintiff does not allege that ORA, the movant seeking dismissal of the forgery claim against it, forged anything. Rather, he specifically alleges that the "ruling was provided to ORA by the individuals who signed said document." Cmpl. ¶ 7. Thus, the Court dismisses Plaintiff's claim of forgery against ORA.

### D. Plaintiff Fails To State a Claim for False Light.

Plaintiff purports to assert a cause of action that he labels "false light" and contends that "[t]he elements of false light are identical to defamation." Cmpl. ¶¶ 33, 34. Plaintiff's home state of New Jersey recognizes "a cause of action for false light invasion of privacy." *Machleder v. Diaz*, 801 F.2d 46, 53 (2d Cir. 1986). However, a "'false light' invasion of privacy claim [is] not cognizable under New York law." *Pedraglio Loli v. Citibank Inc.*, 173 F.3d 845, 1999 WL 187913 (2d Cir. 1999) (summary order) (affirming dismissal where a *pro se* plaintiff alleged "false light"); *see DeIuliis v. Engel*, No. 20-cv-3252 (NRB), 2021 WL 4443145, at *9 (S.D.N.Y. Sept. 27, 2021); *MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*, No. 17-cv-7568 (PGG), 2018 WL 4735717, at *13 (S.D.N.Y. Sept. 29, 2018) ("New York does not recognize the tort of false light invasion of privacy."); *Bloom v. Fox News of Los Angeles*, 528 F. Supp. 2d 69, 73 n.4 (E.D.N.Y. 2007) (ruling in a *pro se* case that any false light claim must be dismissed as "not cognizable under New York Law"). As noted above, the parties are "deemed to have consented to" the application of New York law, even though Plaintiff resides in New Jersey. *Supra* n.3 (quoting *Celle*, 209 F.3d at 175). Indeed, Plaintiff specifically alleges that his defamation claim is governed by "New York law" and further alleges that his false light claim is "identical" to his defamation claim. Cmpl. ¶¶ 15, 34.

Accordingly, Plaintiff's false light claim is "dismissed . . . as not cognizable under New York law." *Pedraglio Loli*, 173 F.3d at 845.

**E. Plaintiff Fails To State a Claim for Intentional Infliction of Emotional Distress.**

Plaintiff asserts a claim for intentional infliction of emotional distress.  Cmpl. ¶¶ 35–42. He alleges that ORA "spread . . . false claims . . . that [he is] an 'abuser'" and "encourage[d] the Orthodox Jewish public to harass [his] family members."  Cmpl. ¶ 38.  Plaintiff alleges that the "purpose" was "causing [him] such severe . . . emotional distress that no reasonable person could withstand" so that he would "relinquish [his] GET property right." Cmpl. ¶ 39.

In New York, a claim for intentional infliction of emotional distress "has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the outrageous conduct and injury; and (iv) severe emotional distress."  *Howell v. New York Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993).  Intentional infliction of emotional distress is "a highly disfavored tort under New York law."  *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) (internal quotation marks and brackets omitted).  Specifically, it is exceedingly rare to satisfy the first element. *See Howell*, 81 N.Y.2d at 122, 612 N.E.2d at 702 ("Indeed, of the intentional infliction of emotional distress claims considered by this Court, every one has failed because the alleged conduct was not sufficiently outrageous."); *see Murphy v. Am. Home Prod. Corp.*, 58 N.Y.2d 293, 303, 448 N.E.2d 86, 90 (1983).  Conduct may be considered "extreme and outrageous" only if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Murphy*, 58 N.Y.2d at 303 (citation omitted).

Plaintiff has not alleged conduct by ORA that is sufficiently extreme and outrageous to meet this exceptionally "strict standard." *Murphy*, 58 N.Y.2d at 303.  In *Freihofer v. Hearst Corp.*, the New York Court of appeals rejected a claim of intentional infliction of emotional distress based on the publication of several newspaper articles about the plaintiff's divorce that included "charges of mental and physical cruelty and adultery." *Freihofer*, 65 N.Y.2d at 138.  The court held that the alleged conduct "[c]learly" did not meet the standard.  *Id*. at 143–44.  Similarly, here, Plaintiff alleges that ORA posted information about his divorce and accused him of abuse.  That ORA also allegedly urged others to refrain from associating with Plaintiff and to convince him to give his wife a Get is not enough to distinguish this case and meet the strict standard for alleging extreme and outrageous conduct that is "utterly intolerable in a civilized community." *Murphy*, 58 N.Y.2d at 303.  Accordingly, in light of New York precedent, Plaintiff's claim for intentional infliction of emotional distress is dismissed.

### F.  Plaintiff Fails To State a Claim for Civil Conspiracy.

Plaintiff alleges that ORA conspired with the individual defendants in a "scheme to cause [him] untold psychological and emotional distress for the purpose of extracting a Get from [him]." Cmpl. ¶ 46.  Plaintiff further alleges that ORA engaged in a conspiracy to "defame [him] . . . for purposes of extracting a Get from [him]" and "conspired to commit IIED."  Cmpl. ¶¶ 47, 48. He alleges that ORA took "an over act" by "publishing" on its website.  Cmpl. ¶ 48.

"It is textbook law that New York does not recognize an independent tort of conspiracy." *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 913 (S.D.N.Y. 2016) (quoting *Sepenuk v. Marshall*, 98-cv-1569 (RCC), 2000 WL 1808977, at *6 (S.D.N.Y. Dec. 8, 2000)); *see Legion Lighting Co. v. Switzer Grp., Inc.*, 171 A.D.2d 472, 473, 567 N.Y.S.2d 52, 52 (1st Dep't 1991).  If, and only if, "an underlying, actionable tort" is alleged, the plaintiff "may

plead the existence of a conspiracy in order to demonstrate that each defendant's conduct was part of a common scheme." *Gym Door Repairs*, 206 F. Supp. 3d at 913 (quoting *Sepenuk*, 2000 WL 1808977, at *6).  "To establish a claim of civil conspiracy," then, "the plaintiffs 'must demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury.'" *Gym Door Repairs*, 206 F. Supp. 3d at 913 (quoting *World Wrestling Fed'n Entm't, Inc. v. Bozell*, 142 F. Supp. 2d 514, 532 (S.D.N.Y. 2001)).

Here, as explained above, Plaintiff fails to state a claim for any "underlying, actionable tort." *Gym Door Repairs*, 206 F. Supp. 3d at 913 (quoting *Sepenuk*, 2000 WL 1808977, at *6). Thus, his civil conspiracy claim must also be dismissed.  *See id.*

## IV.   CONCLUSION

For the reasons set forth above, ORA's motion to dismiss [ECF No. 14] is GRANTED.  As noted above, Plaintiff previously dismissed his claims against the Individual Defendants [ECF Nos. 21, 22].  Thus, the Clerk of Court respectfully is requested to terminate all pending motions and to close this case.

**SO ORDERED.**

**Date:  March 28, 2024**
**New York, NY**

_Mary Kay Vyskocil_
**MARY KAY VYSKOCIL**
**United States District Judge**